PHILLIP McMILLAN, JANET CONNELL, TRACY TURNER, CARROLL C. TURNER, DALE DRAKE, REGINALD DRAKE, BOBBIE WILSON, J. BRUCE WILSON, MARGARET WILSON, GEORGIA C. MARX, MELVIN MARX, JOHN EARL FOY, RUTH P. FOY, STEVE K. PERRY, KIPP COX, NANCY MADAR, PAUL MADAR, JOAN R. POST, KARL A. WILLIAMS, BARBARA A. WILLIAMS, GUNTHAM M. GERSCH, STANLEY BRIGHTWELL, ALAN LURIA, PAT RYAN, EARL A. BETTINGER, J. RANDALL GROBE, PLAINTIFFS v. TOWN OF TRYON, AN INCORPO- RATED MUNICIPALITY OF THE STATE OF NORTH CAROLINA, TOWN COUNCIL FOR THE TOWN OF TRYON, AND THE TRYON COUNTRY CLUB, INC., RESPONDENTS AND DEFENDANTS, DEFENDANTS

No. COA08-1253

(Filed 6 October 2009)

### 1. Pleadings— motion to further amend denied—undue prejudice to opposing party

The trial court did not abuse its discretion by denying plaintiffs' motion to further amend their pleadings to include additional allegations of a commissioner's conflict of interest and *ex parte* communications prior to a rezoning hearing. Plaintiffs' delay in seeking the amendment would have unduly prejudiced defendants and the proposed amendment would have been futile.

### 2. Zoning— rezoning—summary judgment—scope of review

The trial court erred in a rezoning case by granting defendants' motion for summary judgment; the matter is remanded to the trial court for imposition of the standard of review set forth in *Friends of Mt. Vernon Springs, Inc.*, 190 N.C. App. 633 (2008).

Appeal by plaintiffs from an order entered 29 May 2008 by Judge J. Marlene Hyatt in Polk County Superior Court. Heard in the Court of Appeals 26 March 2009.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus; and Whitmire & Beeker, by Angela Beeker, Esq., for plaintiffs-appellants.*

*Parker Poe Adams & Bernstein L.L.P., by Anthony Fox, Benjamin R. Sullivan, and Susan W. Matthews, for defendants-appellees.*

JACKSON, Judge.

Phillip McMillan ("McMillan"), Janet Connell, Tracy Turner, Carol C. Turner, Dale Drake, Reginald Drake ("Drake"), Bobbie Wilson,

McMILLAN v. TOWN OF TRYON

[200 N.C. App. 228 (2009)]

J. Bruce Wilson ("Wilson"), Georgia C. Marx, Melvin Marx, John Earl Foy, Ruth P. Foy, Steve K. Perry, Kipp Cox, Nancy Madar, Paul Madar, Joan R. Post, Karl A. Williams, Barbara A. Williams, Guntham M. Gersch, Stanley Brightwell, Alan Luria, Pat Ryan, Earl A. Bettinger, and J. Randall Grobe (collectively, "plaintiffs") appeal from an order entered 29 May 2008 granting summary judgment in favor of the Town of Tryon ("Town"), Town Council for the Town of Tryon ("Town Council"), and the Tryon Country Club, Inc. ("Country Club") (collectively, "defendants"). For the reasons set forth below, we affirm in part, reverse in part, and remand.

As set forth in a related appeal in Court of Appeals file number 08-642 filed contemporaneously herewith, the instant appeal concerns the re-zoning of approximately 126 acres of Country Club property—all of which is located within the Town's municipal boundaries or subject to the Town's zoning authority—to allow the development of sixty new residential homes.

In October 2006, a proposal to re-zone the property had been denied, and, after waiting the required three months, the proposal was resubmitted with additional information. On 20 March 2007, the Town Council conducted a hearing to reconsider re-zoning approximately 126 acres of the Country Club property from "P-1" open-space zone and "R-3" single-family home residential zone to an "R-4 Conditional Use Zone" so that it would be possible to build a mixture of single-family units as well as duplexes in a portion of the re-zoned area upon the issuance of a Conditional Use Permit.

The Country Club and developers from dewSouth Communities ("dewSouth") planned to develop approximately sixty new residential units as well as a new tennis and swimming facility for the Country Club on approximately fifty-one of the 126 re-zoned acres. The sixty new residential units were to be comprised of forty single-family residences and ten duplexes. Without re-zoning the R-3 district to an R-4 Conditional Use Zone and issuing a Conditional Use Permit, the duplexes would be an unlawful use of the land.

At the 20 March 2007 hearing, the Town Council heard sworn testimony from Town residents; Country Club residents; plaintiffs McMillan, Drake, and Wilson; and architects and other members of the dewSouth development team. The Town Council unanimously voted in favor of re-zoning a portion of the Country Club property to an R-4 Conditional Use Zone. The Town Council also unanimously

voted to approve the associated Conditional Use Permit necessary to allow the proposed development of the re-zoned property.

On 20 April 2007, plaintiffs filed a complaint and petition for writ of *certiorari*[1] seeking review of the 20 March 2007 hearing. On 10 July 2007, defendants filed an answer. On 11 July 2007, the parties submitted to the superior court the record of the Town Council's proceedings at the 20 March 2007 hearing. On 14 January 2008, plaintiffs filed amendments to their original petition and complaint to which defendants jointly responded on 19 February 2008. On 14 March 2008, defendants filed a motion for summary judgment. On 20 March 2008, plaintiffs moved the trial court (1) for leave to further amend their amended petition and complaint, and (2) for a continuance. On 29 May 2008, the trial court entered an order denying plaintiffs' motion to further amend their amended petition and complaint and granting summary judgment in defendants' favor. Plaintiffs appeal.

**[1]** On appeal, plaintiffs first argue that the trial court erred in denying their motion to further amend their pleadings to include additional allegations relating to Commissioner Benson's purported conflict of interest and *ex parte* communications prior to the 20 March 2007 re-zoning hearing. We disagree.

North Carolina Rules of Civil Procedure, Rule 15 provides in relevant part that

> [a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

N.C. Gen. Stat. § 1A-1, Rule 15(a) (2007). Proper reasons for denying a motion to amend include, *inter alia*, undue delay by the moving party, unfair prejudice to the non-moving party, and futility of the amendment. *Delta Envtl. Consultants of N.C., Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 166, 510 S.E.2d 690, 694, *disc. rev. denied*, 350 N.C. 379, 536 S.E.2d 70 (1999) (citations omitted). It is

---

1. Issues related to plaintiffs' petition for writ of *certiorari* are not considered in this appeal, but are addressed in a related appeal filed contemporaneously herewith with our file number 08-642.

well-established that a motion pursuant to Rule 15(a) "for leave of court to amend a pleading is addressed to the sound discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of an abuse of discretion." *Kinnard v. Mecklenburg Fair, Ltd.*, 46 N.C. App. 725, 727, 266 S.E.2d 14, 16 (citing *Hudspeth v. Bunzey*, 35 N.C. App. 231, 241 S.E.2d 119, *cert. denied and appeal dismissed*, 294 N.C. 736, 244 S.E.2d 154 (1978)), *aff'd*, 301 N.C. 522, 524, 271 S.E.2d 909, 910 (1980) (per curiam).

In the case *sub judice*, plaintiffs filed their original complaint on 20 April 2007. On 14 January 2008, plaintiffs amended their complaint with leave of the court. In plaintiffs' original and amended complaints, plaintiffs alleged in relevant part that

> [t]he procedures followed by the Town Council at the March 20, 2007 [hearing] violated the procedural due process rights of the [plaintiffs] in that Commissioner Benson participated in the hearing, after disclosing that he was a member of the Country Club. Such membership by Commissioner Benson constituted an impermissible conflict of interest, and precluded consideration of the matter by an impartial decision-maker.

On 14 March 2008, defendants filed a motion for summary judgment with supporting affidavits, including an affidavit from Ted Hiley ("Hiley"), a member of the Country Club's Board of Directors. In his affidavit, Hiley stated that after the October 2006 denial of the re-zoning proposal, the Town Council urged the Country Club to invite concerned property owners to a meeting where they could learn more about the proposed development.

On 20 March 2008—one year after the events giving rise to plaintiffs' cause of action and eleven months after plaintiffs' original complaint—plaintiffs moved the trial court (1) for leave to amend their amended petition and complaint again in light of Hiley's affidavit, and (2) for a continuance to depose witnesses and secure affidavits in opposition to defendants' motion for summary judgment. Plaintiffs argued that Hiley's affidavit raised an inference of *ex parte* communications between the Town Council and the Country Club prior to the 20 March 2007 hearing, which may have created an improper bias.

On 14 April 2008, the matter came on for hearing. At the hearing, defendants' counsel argued that

> [c]oncerning the undue prejudice argument, Your honor it's important for me to emphasize where we are in this case. Plaintiffs

filed this lawsuit on April 20th last year. This Sunday will be the one-year anniversary. And until they took the depositions that they took last week[,] plaintiffs had conducted no discovery in this case, no interrogatories, no request for production, no depositions, nothing at all.

That's not until after we filed a motion for summary judgment on March 14 that they filed this motion to amend and noticed the depositions they took last week. Their motion to amend says that their motion is based on the [f]act that our motion for summary judgment revealed new information.

If that's true, I would submit that the information was new to them because plaintiffs did nothing for the first year of this case to obtain any information.

. . . .

If you don't do any discovery[,] the odds of being surprised by the defendant's motion for summary judgment is a chance that you take . . . . Plaintiffs have had a year to do discovery, develop their case, and figure out what their theories and allegations should be.

Our motion for summary judgment is based on the complaint as it stands today and [it] would unduly prejudice us, Your honor to allow them to amend at this late stage.

On 29 May 2008, having reviewed the motion and counsels' arguments, the trial court denied plaintiffs' second motion to amend their pleadings "because it would unduly prejudice Defendants, because Plaintiffs unduly delayed in seeking the amendment, and because the proposed amendment would be futile." On appeal, plaintiffs acknowledge that the original and amended pleadings "already provided insight as to procedural irregularities that will necessarily require proof similar to that obtained in the depositions . . . ." It is axiomatic that plaintiffs bear the burden of proof on their claims, and because plaintiffs admittedly were aware that discovery would clarify the issues and refine the theories, defendants should not be burdened by plaintiffs' unreasonable delay in vetting their claim. Accordingly, in light of the foregoing, we agree with the trial court, and we hold that the trial court did not abuse its discretion in denying plaintiffs' motion to further amend their pleadings.

[2]  Next, plaintiffs argue that the trial court erred in granting defendants' motion for summary judgment because the record demonstrates

that the Town Council committed procedural violations in adopting the ordinance. We agree.

"We review a trial court's order for summary judgment de novo to determine whether there is a 'genuine issue of material fact' and whether either party is 'entitled to judgment as a matter of law.' " *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007) (quoting *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing N.C. Gen. Stat. § 1A-1, Rule 56(c))).

We recently reiterated the well-established rule that "[l]ocal governments have only powers conferred to them by the Legislature." *Thrash Ltd. P'ship v. County of Buncombe*, 195 N.C. App. 727, 732, 673 S.E.2d 689, 693 (2009) (citing *Keiger v. Board of Adjustment*, 281 N.C. 715, 720, 190 S.E.2d 175, 179 (1972) and *Surplus Co. v. Pleasants*, 264 N.C. 650, 654, 142 S.E.2d 697, 701 (1965)). North Carolina General Statutes, section 160A-381 grants a municipality the power to regulate the uses of land within its jurisdiction "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community . . . ." N.C. Gen. Stat. § 160A-381(a) (2007).

Section 160A-381 further authorizes municipalities to enact regulations which allow the municipality to issue special use permits or conditional use permits "in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits." N.C. Gen. Stat. § 160A-381(c) (2007). "When deciding special use permits or conditional use permits, the city council or planning board shall follow quasi-judicial procedures." *Id.* However, we have instructed that "[t]he plain language of this statute does not require that local ordinances provide for the issuance of conditional use permits. The statute clearly states that a city *may* provide for the issuance of such permits, but it clearly does not mandate such a procedure." *Massey v. City of Charlotte*, 145 N.C. App. 345, 354, 550 S.E.2d 838, 845, *cert. denied*, 354 N.C. 219, 554 S.E.2d 342 (2001).

North Carolina General Statutes, section 160A-382 allows municipalities to adopt conditional use districts. N.C. Gen. Stat. § 160A-382 (2007). In relevant part, section 160A-382 provides that

[f]or any or all these purposes, the city may divide its territorial jurisdiction into districts of any number, shape, and area that may be deemed best suited to carry out the purposes of this Part; and within those districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of build-

ings, structures, or land. Such districts may include, but shall not be limited to, general use districts, in which a variety of uses are permissible in accordance with general standards; overlay districts, in which additional requirements are imposed on certain properties within one or more underlying general or special use districts; and special use districts or conditional use districts, in which uses are permitted only upon the issuance of a special use permit or a conditional use permit and conditional zoning districts, in which site plans and individualized development conditions are imposed.

N.C. Gen. Stat. § 160A-382 (2007).

In *Summers v. City of Charlotte*, 149 N.C. App. 509, 562 S.E.2d 18, *disc. rev. denied and appeal dismissed*, 355 N.C. 758, 566 S.E.2d 482 (2002), we explained that

[z]oning is generally described as a legislative process. Conditional use zoning, as historically practiced, is a two-step process with the rezoning decision meeting all of the statutory requirements for legislative decisions and the permit decision meeting all of the constitutional requirements for quasi-judicial decisions. More recently, however, some local governments have combined this two-step process into one proceeding, commonly referred to as conditional zoning. Under this procedure, the rezoning decision is made concurrent with approval of the site plan. This combined procedure or conditional zoning is entirely a legislative act.

*Summers*, 149 N.C. App. at 516-17, 562 S.E.2d at 24 (internal citations and quotation marks omitted). We also have explained that section 160A-382 does not "impos[e] any requirement of a quasi-judicial permitting process as a prerequisite to the exercise of the [legislative] discretion granted under the statute." *Massey*, 145 N.C. App. at 355, 550 S.E.2d at 845.

In both *Massey* and *Summers*, we upheld the City of Charlotte's conditional use re-zoning as a legislative act, but we noted that the relevant ordinances did not require any quasi-judicial process. *See Summers*, 149 N.C. App. at 516-17, 562 S.E.2d at 24 (affirming the city's conditional use re-zoning in a single, legislative procedure)[2];

---

2. In *Summers*, we explained that the North Carolina General Assembly previously had enacted Session Law 2000-84 which expressly allowed the City of Charlotte "to engage in conditional zoning as a legislative process." *Summers*, 149 N.C. App. at 512, 562 S.E.2d at 21; 2000 N.C. Sess. Laws 84, § 1(e).

*Massey*, 145 N.C. App. at 352-53, 550 S.E.2d at 844 (noting that the city followed the procedural requirements set forth in its ordinance and rejecting the trial court's conclusion that the absence of a quasi-judicial element invalidated the re-zoning decision)[3]. *See also Chrismon v. Guilford County*, 322 N.C. 611, 638-39, 370 S.E.2d 579, 594-95 (1988) (holding "that the Board [validly exercised its legislative discretion] in this matter only after a lengthy deliberation completely consistent with both the procedure called for by the relevant zoning ordinance and the rules prohibiting illegal contract zoning").

Furthermore, in *Knight v. Town of Knightdale*, 164 N.C. App. 766, 596 S.E.2d 881 (2004), we explained that

[t]he rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances. The basic rule of statutory construction is to ascertain and effectuate the intention of the municipal legislative body. The best indicia of that intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.

*Knight*, 164 N.C. App. at 769, 596 S.E.2d at 884 (internal citations and quotation marks omitted).

In the case *sub judice*, however, the Town's Zoning Ordinance specifically required that

[p]roposals for rezoning to any Conditional Use District shall always be accompanied by a request for a Conditional Use Permit. *Such proposals and requests shall be processed and considered in a quasi-judicial manner.*

Any proposal for Conditional Use District rezoning and its accompanying request for a Conditional Use Permit shall be heard and considered simultaneously. If the Board of Commissioners should determine that the property involved in the proposal should be rezoned and the Conditional Use Permit issued, it shall adopt an Ordinance rezoning the property and authorizing the issuance of the Conditional Use Permit. Otherwise the proposal shall be denied.

Town of Tryon, N.C. Zoning Ordinance art. 9, § 9.7 (2005) (emphasis added).

---

3. In *Massey*, we noted that Session Law 2000-84 had been enacted by the time our decision was rendered, but that it had not been enacted when the proceeding had been filed. *Massey*, 145 N.C. App. at 347, 550 S.E.2d at 841. Accordingly, we limited our decision to the facts of the case and laws existing at the time the case had been filed. *Id.*

In contrast to *Chrismon, Massey,* and *Summers,* which relied upon legislative conditional use zoning, here we review the Town's exercise of its statutorily granted prerogative pursuant to North Carolina General Statutes, section 160A-381 to adopt a quasi-judicial process when conducting a consolidated hearing re-zoning proposals and conditional use permit requests. Nonetheless, our case law is clear that "[z]oning and rezoning are legislative acts." *Brown v. Town of Davidson,* 113 N.C. App. 553, 556, 439 S.E.2d 206, 208 (1994) (citing *Sherrill v. Town of Wrightsville Beach,* 81 N.C. App. 369, 373, 344 S.E.2d 357, 360, *disc. rev. denied and appeal dismissed,* 318 N.C. 417, 349 S.E.2d 600 (1986)). *See also Childress v. Yadkin County,* 186 N.C. App. 30, 34, 650 S.E.2d 55, 59 (2007) ("Re-zoning is considered a legislative act.") (citation omitted); *Summers,* 149 N.C. App. at 516-17, 562 S.E.2d at 24 (describing zoning as a legislative process).

At the outset of the 20 March 2007 hearing, it was explained that conditional use zoning consists of two components—a legislative, re-zoning component and a quasi-judicial permitting component. Those who wished to speak at the hearing were sworn in at the beginning of the hearing "in [the] interest of time and getting more information at one time." However, in *Massey,* we explained that a quasi-judicial hearing "involves all due process requirements[.]" *Massey,* 145 N.C. App. at 349-50, 550 S.E.2d 842 (citations omitted). Therefore, we construe section 9.7 of the Town's Zoning Ordinance as a decision by the Town to employ a quasi-judicial process during hearings for conditional use zoning proposals and requests for conditional use permits as a means of (1) streamlining the introduction of evidence rather than receiving duplicative evidence in independent legislative and quasi-judicial hearings, and (2) offering the Town's residents enhanced due process protections even though the re-zoning decision ultimately remains legislative.

Although *Chrismon, Massey,* and *Summers* make clear that a completely legislative process may be employed when a county or municipality seeks to use conditional use zoning, if a political subdivision chooses to adopt a consolidated quasi-judicial process in conditional use zoning, we recognize that process as another valid means to exercise the valuable flexibility conditional use zoning offers when regulating land use. *Chrismon,* 322 N.C. at 622, 370 S.E.2d at 586.

Notwithstanding the Town's legislative decision to re-zone, by adoption of its ordinance, the Town bound itself to a quasi-judicial process when considering a re-zoning to Conditional Use District

accompanied by a request for a Conditional Use Permit. Therefore, it was incumbent upon the superior court to

> (1) review the record for errors of law, (2) ensure that procedures specified by law in both statute and ordinance are followed, (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Friends of Mt. Vernon Springs, Inc. v. Town of Siler City*, 190 N.C. App. 633, 636, 660 S.E.2d 657, 660 (2008) (quoting *Humane Soc'y of Moore Cty., Inc. v. Town of Southern Pines*, 161 N.C. App. 625, 628-29, 589 S.E.2d 162, 165 (2003)). On appeal, our task is to (1) " 'determine whether the [superior] court exercised the proper scope of review, and (2) to review whether the [superior] court correctly applied this scope of review.' " *Id.* (quoting *Humane Soc'y of Moore Cty., Inc. v. Town of Southern Pines*, 161 N.C. App. 625, 628-29, 589 S.E.2d 162, 165 (2003)).

Upon review, the trial court's order reveals that the court did not exercise the proper scope of review set forth in *Friends of Mt. Vernon Springs, Inc. See id.* In relevant part, the trial court's order granting defendants' motion for summary judgment stated:

> On April 20, 2007, Plaintiffs filed this action in Polk County Superior Court seeking: (i) a declaratory judgment that the Town Council's decision to rezone TCC's property was invalid and (ii) a Writ of Certiorari for this Court to review and overturn the Town Council's quasi-judicial decision to issue the conditional use permit to TCC. This Court issued the Writ of Certiorari but, by Order dated February 14, 2008, subsequently dismissed Plaintiffs' quasi-judicial appeal of the conditional use permit.

> Remaining before this Court is Plaintiffs' declaratory judgment claim challenging the rezoning of TCC's property, and Defendants filed a March 14, 2008 Motion for Summary Judgment on that claim. On March 20, 2008, Plaintiffs filed a Motion to Amend their Amended Complaint in order to allege, among other things, that the rezoning of TCC's property was quasi-judicial in nature rather than legislative. After reviewing the Motion and considering the arguments of counsel, this Court rules that

Plaintiffs' Motion to Amend should be DENIED because it would unduly prejudice Defendants, because plaintiffs unduly delayed in seeking the amendment, and because the proposed amendment would be futile.

And the Court, having now considered all relevant pleadings in this matter, the affidavits and deposition transcripts submitted, the briefs submitted by each party, and the arguments made by the parties' respective counsel, determines that no genuine issue of material fact exists as to Plaintiffs' remaining claim for declaratory judgment and that Defendants are entitled to judgment in their favor as a matter of law.

Accordingly, the order from which plaintiffs appealed is insufficient for us to perform our review as an appellate Court. *See id.* Therefore, we remand the matter to the trial court for imposition of the proper standard of review as set forth in *Friends of Mt. Vernon Springs, Inc.*

Because we so hold, we do not need to further address plaintiffs' remaining arguments.

For the foregoing reasons, the trial court's denial of plaintiffs' motion to amend their pleadings is affirmed, but the entry of summary judgment in defendants' favor is reversed, and the matter is remanded to the trial court.

Affirmed in part; Reversed in part; Remanded.

Judges STEPHENS and STROUD concur.