[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12219

_____

D.C. Docket No. 1:13-cv-01608-MHS

TWIN CITY FIRE INSURANCE COMPANY,

Plaintiff - Appellant,

versus

HARTMAN, SIMONS & WOOD, LLP, GIL Y. BURSTINER, AND
STEPHANIE B. SKIDMORE,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 15, 2015)

Before MARCUS and ROSENBAUM, Circuit Judges, and FRIEDMAN,[*] District
Judge.

PER CURIAM:

_____

[*] Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting
by designation.

Twin City Fire Insurance Company ("Twin City") seeks recoupment of some or all of a $10 million settlement that it paid on behalf of its insured, the law firm of Hartman, Simons & Wood, LLP ("Hartman Simons"). The district court dismissed Twin City's complaint and then denied Twin City's motion for reconsideration of the dismissal. Twin City appeals both of the district court's orders, arguing that it was error to conclude that the lawsuit was barred by two affirmative defenses: waiver and voluntary payment. Because the face of Twin City's complaint does not clearly demonstrate the applicability of these bars, we conclude that the dismissal of Twin City's complaint was improper. Accordingly, we vacate the district court's orders in part, affirm them in part, and remand so that Hartman Simons may answer Twin City's complaint and the parties may proceed to discovery.

## I.

The complaint sets forth the following factual allegations. Twin City issued two professional liability insurance policies to Hartman Simons, the first covering the period from December 31, 2008, to December 31, 2009, and the second covering December 31, 2009, to December 31, 2010. The policies insured the law firm against malpractice liabilities in excess of a $100,000 per claim deductible, up to $10 million. Under the policies, Twin City's duty to provide coverage depended in part on the law firm's having provided timely notice to Twin City of any claim

2

or reasonably foreseeable claim. In addition, Twin City had no duty to provide coverage if, at the inception date of a policy, Hartman Simons had knowledge of facts that reasonably could form the basis for a malpractice claim against it.

In September of 2009, the Bank of North Georgia ("the Bank") retained Hartman Simons in connection with a real estate transaction with Northside Guaranty, LLC ("Northside"). The Bank planned to release Northside from its guaranty on a loan related to a property called Lost Creek, in exchange for the release of a second mortgage held by Northside's principal, John Williams, on a separate piece of real property. Two Hartman Simons attorneys — partner Gil Burstiner and associate Stephanie Skidmore — sent a draft release to counsel for Northside and Mr. Williams. Northside returned the draft with a new paragraph added to it, and Mr. Burstiner and Ms. Skidmore approved the change. The Bank signed the release on October 23, 2009, and the deal closed.

On November 11, 2009, the Bank informed Mr. Burstiner and Ms. Skidmore of Mr. Williams' contention that the agreement, as amended, released him and his affiliated companies not only from Northside's guaranty related to Lost Creek, but from all of their financial obligations to the Bank. One month later, Mr. Burstiner and Ms. Skidmore were further notified that the Bank had received a letter from a representative of Mr. Williams, taking the position that the agreement released at

least 58 affiliated individuals and entities of their obligations to the Bank and the Bank's corporate parent.

About six months later, Northside and its associated entities brought an action in Georgia state court, seeking a declaration that the October 23 agreement fully relieved them of their obligations to the Bank. A week later, on June 24, 2010, the Bank demanded indemnification from Hartman Simons for any losses it might sustain as a result of the Northside entities' claims. Three weeks after that, on July 14, 2010, Hartman Simons notified Twin City of the Bank's indemnification claim.[1]

Nearly three years later, in April of 2013, the Bank offered to settle its claim against Hartman Simons and tendered a $10 million time-limited settlement demand to Twin City. Hartman Simons demanded that Twin City accept the Bank's offer by the close of business on May 10, 2013, because it was to expire on that date. But Hartman Simons rejected Twin City's request that the law firm agree to an allocation of the settlement payment between covered and noncovered amounts. Twin City then notified Hartman Simons that it intended to pay the settlement under a full reservation of rights regarding whether the Bank's claim was covered under the insurance policies.

---

[1] Although Twin City's complaint states that the Bank had actually filed suit against Hartman Simons, the parties' briefs on appeal make clear that this factual allegation is erroneous.

Before the close of business on May 10 — and shortly before making the settlement payment to the Bank — Twin City filed its complaint in the present action, seeking a declaratory judgment that it has no coverage obligations under either insurance policy because Hartman Simons allegedly failed to timely notify Twin City of the likelihood that the Bank would assert a claim against the law firm.[2]  Twin City also asserted claims for "allocation" and for "recoupment."  The allocation claim sought "a declaration of the appropriate allocation," as between Twin City and Hartman Simons, of the defense and indemnity costs related to the Bank's claim.  Under its claim for recoupment, Twin City contended that "[t]o the extent Twin City has no coverage obligations for [the Bank's claim], [Hartman Simons] will be unjustly enriched by Twin City's payment of the Bank of North Georgia's settlement demand, and Twin City is entitled to recoup some or all of that payment from [Hartman Simons]."  Federal jurisdiction was predicated on diversity of citizenship, and Georgia law governed all of the claims.

Hartman Simons moved to dismiss Twin City's complaint.  With respect to the claim for a declaratory judgment of noncoverage, the law firm argued that Twin City lacked standing because it faced no imminent threat of future harm.  As

---

[2] More specifically, Twin City alleges that it bears no coverage obligation under the December 31, 2008, to December 31, 2009, policy because Hartman Simons failed to provide timely notice to Twin City after learning in November 2009 of facts that reasonably could lead to a claim against the law firm.  Twin City alleges that it bears no coverage obligation under the second policy, running from December 31, 2009, to December 31, 2010, because Hartman Simons was aware of those same facts prior to the inception of that policy.

5

for allocation and recoupment, Hartman Simons maintained that these claims should be dismissed for failure to state a claim because:  (1) Twin City failed to properly reserve its right to seek recoupment and that right therefore had been waived; (2) Twin City's settlement with the Bank was a "voluntary payment"; and (3) Twin City had no contractual right to seek allocation or recoupment of the settlement payment.

The district court granted Hartman Simons' motion and dismissed Twin City's complaint with prejudice.  Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, Civil Action No. 1:13-cv-1608-MHS, 2013 WL 8368744 (N.D. Ga. Nov. 25, 2013).  The court first agreed that Twin City lacked standing to pursue declaratory relief.  Id. at *3.  With respect to the allocation and recoupment claims, the district court concluded that Twin City had "waived these claims by failing to properly reserve its rights before agreeing to pay out its policy limits."  Id. at *4. The court declined to address Hartman Simons' other two arguments for dismissal. Id. at *4 n.2.  Twin City then filed a motion for reconsideration of the court's decision.  The district court denied the motion, reaffirming its conclusion that Twin City had waived any claim to recoup from Hartman Simons some or all of the settlement payment.  Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, Civil Action No. 1:13-cv-1608-MHS, 2014 WL 1800868, at *3-4 (N.D. Ga. Apr. 21, 2014).  The court further held that, "apart from waiver, Twin City's complaint

6

is also subject to dismissal under Georgia's voluntary payment doctrine," id. at *4, a ground it had not addressed in its earlier order granting the motion to dismiss. This appeal followed.

Although the district court purported to dispose of the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the parties' briefs on appeal give the impression that this case comes before us after a grant of summary judgment. The procedural peculiarity of the appeal stems from the parties' having submitted to the district court a large number of extra-complaint documents, most of which were filed in connection with Twin City's motion for reconsideration. To be sure, a court may consider an extra-complaint document in deciding a motion to dismiss without converting the motion into a motion for summary judgment, where the document is (1) central to the plaintiff's claim and (2) its authenticity is not challenged. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). Other than the two insurance policies themselves, however, we decline to consider any of the documents submitted by the parties, nor do we pay mind to the various arguments made in reliance on them. Even if some of these documents may satisfy the two criteria noted above, it is apparent that they reveal disputed issues of fact that cannot be resolved on a motion to dismiss. Although the parties wrangle over a number of these fact-dependent legal issues, which may become relevant should this case reach the summary judgment stage, they are not properly before us now.

7

Our review, therefore, is strictly limited to assessing the viability of Twin City's complaint and the propriety of the district court's dismissal of it.

## II.

"We review *de novo* the dismissal of a complaint for failure to state a claim." Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009). "[W]e review for an abuse of discretion the denial of a motion to reconsider, reviewing any attendant question of law *de novo*." Smith v. Casey, 741 F.3d 1236, 1241 (11th Cir. 2014) (citations omitted). Likewise, "[w]e review *de novo* whether plaintiffs have Article III standing." Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury, 773 F.3d 243, 245 (11th Cir. 2014).

## III.

## A.

The district court concluded that Twin City had waived any right it held to recoup some or all of the settlement payment made to the Bank. Waiver is listed as an affirmative defense under Rule 8 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 8(c)(1). A plaintiff is "not required to negate an affirmative defense in [its] complaint." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (quoting Tregenza v. Great American Commc'ns Co., 12 F.3d 717, 718 (7th Cir. 1993)). Thus, "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss." Quiller v. Barclays American/Credit, Inc., 727 F.2d

8

1067, 1069 (11th Cir. 1984), en banc reh'g, 764 F.2d 1400 (11th Cir. 1985) (per curiam) (reinstating panel opinion).  A complaint may be dismissed, however, when the existence of an affirmative defense "clearly appears on the face of the complaint."  Id.; see also Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint.") (citing Jones v. Bock, 549 U.S. 199, 215 (2007)).

In the district court's view, waiver was evident because Twin City's complaint showed that it had been notified in 2010 of the Bank's indemnification claim against Hartman Simons, but then supposedly waited nearly three years to reserve its rights and to seek declaratory relief regarding whether the claim was covered by the insurance policies, Twin City Fire Ins. Co., 2013 WL 8368744, at *5-7, despite having had "ample time to investigate any coverage issues and seek declaratory relief before being presented with the Bank's settlement demand."  Id. at 5 n.5.  In deciding Twin City's motion for reconsideration, the district court reaffirmed "its ruling that Twin City was dilatory in reserving its rights and seeking declaratory relief" because Twin City "could have unilaterally reserved its rights and sought immediate declaratory relief" no later than July 2011, "but it chose not to do so." Twin City Fire Ins. Co., 2014 WL 1800868, at *3.  By finding that Twin City was "dilatory" in responding to the Bank's claim against Hartman

9

Simons, however, the district court necessarily relied on factual conclusions and inferences, and, at least on the motion for reconsideration, extra-complaint documents; this was inappropriate in deciding a motion to dismiss.

The complaint includes no factual allegations regarding what might have occurred in the nearly three years between July 2010, when the Bank asserted its claim, and April 2013 when it made its time-limited settlement demand. Notwithstanding this silence, the district court concluded that Twin City had failed to reserve its rights or to seek declaratory relief at any point prior to the day of settlement, and the court therefore determined that Twin City's conduct during the three-year period was "dilatory." The district court's determination that "Twin City waited nearly three years" to reserve its rights and to seek declaratory relief, Twin City Fire Ins. Co., 2013 WL 8368744, at *5, rests on inferences as to what did *not* occur during the period from 2010 to 2013 — in particular, an inference that at no other time did Twin City attempt a reservation of rights that was rejected by Hartman Simons.[3]

In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe a complaint in the light most favorable to the plaintiff, not the other way around. See Adinolfe v. United Techs. Corp., 768 F.3d 1161, 1169 (11th Cir. 2014). Twin

---

[3] Even assuming that Twin City at some point became obliged to seek judicial resolution of the coverage dispute — an issue which we need not decide now, as noted further below — such an obligation could have arisen only after a refusal by Hartman Simons to accede to a reservation of rights. See Kelly v. Lloyd's of London, 336 S.E.2d 772, 775 (Ga. 1985).

City's complaint may have been sparely drafted, but Twin City was under no obligation to anticipate the affirmative defense of waiver and to include factual allegations responsive to that defense. The complaint's silence regarding what might or might not have happened between 2010 and 2013 did not give the district court license to assume that Twin City had failed to take certain actions during that period. Moreover, by concluding that Twin City was "dilatory," the district court implicitly found that Twin City's conduct had prejudiced Hartman Simons. See Kelly v. Lloyd's of London, 336 S.E.2d 772, 775 (Ga. 1985). Whether or not Hartman Simons suffered prejudice due to Twin City's handling of the Bank's claim is quintessentially a question of fact as to which Twin City's complaint provides no answers. And the district court compounded these errors in its decision denying Twin City's motion for reconsideration, in which the court looked well beyond the bounds of the complaint in reaffirming its conclusion on waiver. See Twin City Fire Ins. Co., 2014 WL 1800868, at *2-3 (addressing detailed factual contentions drawn from extra-complaint evidence submitted by the parties).

The district court also placed reliance on Facility Investments, LP v. Homeland Ins. Co. of N.Y., 741 S.E.2d 228 (Ga. Ct. App. 2013) (physical precedent only), a case with no precedential weight under Georgia law and which has not yet been cited by any Georgia court. Although the district court found this

11

decision persuasive, here we need not take a position on whether the Supreme Court of Georgia would endorse it. Our vacatur of the district court's orders is warranted by that court's reliance on factual conclusions that should not have been reached in evaluating Twin City's complaint. For the same reason, this appeal presents no occasion to determine whether, or to what extent, existing Georgia law regarding an insurer's waiver of rights — including the doctrine established in <u>Richmond v. Georgia Farm Bureau Mut. Ins. Co.</u>, 231 S.E.2d 245 (Ga. Ct. App. 1976) — might bear on the time-limited settlement context. The district court may, upon remand and after the development of a full record, have occasion to address these questions. At the present moment, we conclude only that the district court erred in finding waiver based on determinations of fact that did not flow inevitably from the allegations of Twin City's complaint.

## B.

The district court's alternative rationale — that the complaint was subject to dismissal under Georgia's voluntary payment doctrine — likewise implicated factual findings that have no mooring in the bare face of the complaint. The district court recognized that the voluntary payment doctrine, like waiver, is considered an affirmative defense that can justify a complaint's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint shows on its face that the defense applies. <u>See</u> <u>Twin City Fire Ins. Co.</u>, 2014 WL

12

1800868, at *4. Nonetheless, the court looked outside the complaint to find that Twin City "was aware of all the material facts relating to its coverage defense at the time it made the payment to the Bank." Id. We fail to see how such a factual finding could be made looking only at Twin City's complaint, and without any discovery yet having been taken on the issue.

In addition, Georgia law provides two recognized exceptions to the voluntary payment doctrine. The court's decision addressed one of these exceptions — involving payments made under "urgent and immediate" necessity — but its discussion shows that Twin City was burdened with demonstrating affirmatively that the exception applied under the circumstances of this case. As we already have explained, a plaintiff's complaint need not anticipate and counter affirmative defenses. Twin City was improperly put to the task at the motion to dismiss stage of proving the applicability of the exception, where the question should have been whether, looking only at the face of the complaint, it was plain that the exception could *not* be invoked. Moreover, the question whether a payment was made under an urgent and immediate necessity is one of fact. And while Twin City also might have tenable policy-based arguments as to why the voluntary payment doctrine should not apply in the circumstances presented by this case, those circumstances must be defined by a full factual record rather than by

13

the select allegations of a complaint.  Upon remand and after the conduct of discovery, these arguments may be more appropriately considered.

## C.

Finally, we address Twin City's claim for declaratory relief, which the district court dismissed for lack of standing.  Although Twin City arguably possessed standing during the brief period following the filing of its complaint in this action, its declaratory judgment claim plainly became moot as soon as Twin City paid the $10 million settlement to the Bank later that same day.  At that point, a declaration could not have had any bearing on the parties' future conduct; rather, Twin City's aim from that point forward was to recoup what it already had paid. For the same reason, to the extent that the second count of Twin City's complaint seeks merely "a declaration of the appropriate allocation" of defense and indemnity costs, that claim likewise is moot.  Of course, the justiciability of any claims for declaratory relief ultimately is not of practical significance, as Twin City itself acknowledges.  The relief that Twin City seeks is recoupment of some or all of the $10 million it paid to the Bank, and any ultimate determination of its entitlement to recoupment would entail a determination of coverage and, if appropriate, allocation.  We affirm the district court's dismissal of Twin City's declaratory judgment claim.

## IV.

14

For the foregoing reasons, we vacate in part the district court's two orders, affirm the district court's dismissal of the claim for a declaratory judgment, and remand so that Hartman Simons may answer Twin City's complaint and the parties may proceed to discovery.

**VACATED IN PART, AFFIRMED IN PART, AND REMANDED.**

15